UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAHID BAIGI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHEVRON USA, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-06806-SI<br><br>**FINAL PRETRIAL SCHEDULING ORDER** |

On April 16, 2019, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning April 20, 2019. All parties were represented by counsel. The following matters were resolved:

**1.     Number of jurors and challenges:** There will be a jury of seven members. Each side shall have four peremptory challenges.

**2.     Voir dire:** The Court will conduct general voir dire, including various of the questions requested by counsel in their proposed additional voir dire filings. Counsel for each side shall have up to 20 minutes total to question the panel. The parties are directed to meet and confer concerning a neutral, non-argumentative statement of the case which can be read to the jury panel at the beginning of the voir dire process; **this statement shall be provided to the Court no later than Friday, April 26, 2019 at 3:00 p.m.**

**3.** **Jury instructions:** The Court received proposed jury instructions from the parties. Two instructions are disputed. The Court presently agrees with plaintiff that the two contested instructions are redundant of other agreed instructions, and argumentative; they will not be given.

**4.** **Trial exhibits:** <u>**No later than Friday, April 26, 2019 at 3:00 p.m.**</u>, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The Court shall be provided with three sets (the originals for the file, one set for the Court and one set for the witnesses).

**5.** **Timing of trial:** Plaintiff estimates that the trial should take no more than 4 days, and defendant estimates it will take 7 days, including jury selection, opening statements and closing argument. Based on these estimates, and a review of the other materials in the Joint Pretrial Conference Statement, the Court will set the matter for a 6 day trial, as follows: each side shall have up to 30 minutes to present opening statements; each side shall have 10 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 1 hour for closing argument.

**6.** **Trial schedule:** Jury selection will begin on April 29, 2019, at 8:30 a.m. The trial day runs from 8:30 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 30 minute break at noon and a 15 minute break at 2:00 p.m., all times approximate. The Court does not hear trials on Fridays, although juries may continue to deliberate on Fridays.

**7.** **Motions in limine:** The parties filed five motions in limine. Docket Nos. 52, 61-64. After consideration of the arguments made in the briefs and at the pretrial conference, the Court rules as follows:

**Plaintiffs' motion #1** (Dkt. No. 52) to exclude Hyland expert rebuttal report as untimely and prejudicial: DENIED. The report was not untimely; and plaintiff could have deposed, but chose not to depose, Hyland concerning the report. Whether, as a factual matter, Chevron's eleventh-hour job offer was genuine or strategic may be explored by plaintiff with this and other witnesses.

**Defendant's motion #1** (Dkt. No. 61) to exclude certain opinions of expert witness Capt. Mitchell Stoller: GRANTED as to legal conclusions. However, the witness may testify to his opinions about the reasonableness of various actions and procedures.

**Defendant's motion #2** (Dkt. No. 62) to srike portions of turnover notes and exclude testimony concerning turnover notes: DENIED. Defendants here challenge the following statements in Chief Mate Mead's "Turnover Notes" to plaintiff as prejudicial, hearsay, and lacking foundation:

1. "You should be getting Pete Bragg here in Hawaii as Safety Mate and he will assist you with whatever you need en route to Singapore (office just told us that he is no longer coming) (Port Decl., Exhibit 7 at "Baigi 00003");

2. "Captain Eaton has been on and we have had meetings every day which ate into our time to get anything done. Additionally, he expressed concern about the educting while in tanks so to keep from having him start an email shit storm with the office about it we just didn't go there and he forgot about it. We were concerned he might try to stop all of it and get Jeff and everyone else worked up. We can talk about this later." (Port Decl., Exhibit 7 at "Baigi 00003-4");

3. "We just got word that Pete wont (sic) be joining. Word is that Jill will come on as 3M in Singapore and Nate will be staying on as Safety mate." (Port Decl., Exhibit 7 at "Baigi 00010").

First, plaintiff is not offering the notes to prove what Captain Eaton may or may not have said. Dkt. No 66 at 3. Rather, plaintiff offers the Turnover Notes to explain why Chief Mate Meads did not clean the ballast tanks. *Id*.

Second, the Turnover Notes do not constitute hearsay because they are admissible under Federal Rule of Evidence 801(d)(2) as an Opposing Party's Statement. To be admissible under F.R.E. 801(d)(2), the statement must be offered against an opposing party and:

3

(A) made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Chief Mate Meads wrote the Turnover Notes in his capacity as Chief Mate and was authorized to do so – fulfilling A, C, and D above. There is no evidence Chief Mate Meads lied or otherwise wrote untruths in the notes – fulfilling B above. Thus, the Turnover Notes are admissible as an Opposing Party's Statement.

Finally, even if the Turnover Notes are hearsay, they are admissible as a business record. Under Federal Rule of Evidence 803(6), for document to be admissible as a business record, it must (1) be made by a regularly conducted business activity, (2) be kept in the regular course of that business, (3) be the regular practice of that business to make the memorandum, (4) and be made by a person with knowledge or from information transmitted by a person with knowledge. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (internal quotations and citations omitted). Business records are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6).

"Rule 803(6) focuses on the regularity of the record keeping process, ***not on its form***." *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 250 (3rd Cir. 1983) (finding handwritten notes with shorthand notations, arrows, and some indecipherable writing admissible as a business record regularly kept) (emphasis added). When dealing with Rule 803(6), discretion lies in favor of admission. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 497 (10th Cir. 1985).

Chief Mate Meads, a Chevron employee and author of the notes in question, testified during his deposition that his notes were meant to "bring [plaintiff] up to speed as far as what the state of

4

the vessel is, the condition, scope of work, what's been done …. things he'd want to know getting ready to start the job, start his assignment …. every officer does turnover notes, whether you're captain, chief mate, or even second mate." Dkt. No. 66-1 at 17:8-19 (Excerpts of Meads Deposition Testimony). Further, Mr. Baigi testified that, as a Chevron employee, his "normal practice" was to take turnover notes written by other Chevron employees with him and to store turnover notes he drafted on a flash drive. Dkt. No 66-1 at 87:17-88:7 (Excerpts of Baigi Deposition Testimony). Thus, turnover notes are documents kept and regularly created by Chevron employees for the purpose of informing other on-coming employees of the scope and substance of their work.

**Defendant's motion #3** (Dkt. No. 63) to exclude evidence concerning "found damages": GRANTED. Plaintiff did not timely claim his intention to seek such damages, precluding defendant from the opportunity to investigate the claim.

**Defendant's motion #4** (Dkt. No. 64) concerning witness Joanna Moss: GRANTED. Ms. Moss will not testify. However, plaintiff is granted leave to substitute another expert witness to perform the same analysis as did Ms. Moss. The substitute witness may not provide any opinions contrary to or in addition to the opinions already included by Ms. Moss in her report. Plaintiff shall make the substitute expert available to defendants for deposition prior to trial.

**8.** **Other Matters:** In the Joint Pretrial Conference Statement, defendants suggested bifurcating liability and damages for trial purposes. The Court does not find it appropriate to bifurcate in this short trial.

**IT IS SO ORDERED**.

Dated: April 17, 2019

SUSAN ILLSTON
United States District Judge